UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
OCT 26 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-474-GWU

KENNETH HOWARD, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of the unfavorable portion of a partly favorable decision concerning his application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

        Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

    Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Howard

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) separated out his findings in the plaintiff's claim for two separate periods of time: (1) the period between February 1, 2002 through September 30, 2003, the period for which he found the plaintiff "not disabled" and (2) the period from October 1, 2003 (six months short of Howard's 55th birthday) and thereafter, the period for which he declared Howard disabled. (Tr. 18, 21, 26-27). For the earlier period now under review, the ALJ felt Howard had degenerative disc and joint disease, which left the plaintiff with the same physical restrictions (i.e., light level work with additional restrictions on lifting over 15 pounds, sitting more than 30 minutes and postural restrictions) which had been chosen by an ALJ reviewing the plaintiff's 2000 application for benefits. (Tr. 23, 25, 27).

The only source of contention between the parties presently concerns the assessment of the plaintiff's mental condition. The previous ALJ had found no "severe" mental impairments, albeit evidence of borderline intelligence, a depressive

7

disorder and a post traumatic stress disorder were introduced in 2003 and 2004. (Tr. 20-21). According to the new ALJ, the post traumatic stress disorder and depression had gradually exacerbated to the point the plaintiff did not require regular treatment or medication for these problems during 2002 and, therefore, neither was a "severe" impairment during the period for which he denied benefits (Tr. 21). There was evidence of borderline intelligence based on a 2004 psychological evaluation which "did not manifest . . . overnight" and was found to be "severe," (Id.).

The plaintiff does not dispute any findings regarding the depression or post traumatic stress disorder but rather contends that the ALJ failed to include a restriction in "general learning ability" in the hypothetical question provided to the vocational expert and that, according to the <u>Dictionary of Occupational Titles</u> (<u>DOT</u>), the specific jobs relied upon were beyond the plaintiff's intellectual capacity.

As far as the facts in the plaintiff's individual case, at first blush, it appears that the ALJ may have gratuitously considered this "borderline intelligence" to be a "severe" impairment during the period of time in question. Reba Moore reported a Verbal IQ score of 84, a Performance IQ score of 76, and a full scale score of 78 during her testing of the plaintiff in 2004. (Tr. 428). While she stated that the full scale score represented "current" borderline intellectual functioning, she also stated that Howard <u>was</u> able to understand and follow instructions, that his ability to relate

8

to others was adequate, and that he was competent to manage his own finances. (Tr. 430). She did not actually link any restriction to the borderline intellect, whereas she did indicate that at least some restrictions would be linked to the moderate depression and pain present in 2004. (Id.). Descriptions of the plaintiff's life and achievements in years past did not suggest a long-term pattern of intellectual deficits: (1) the plaintiff testified that he had been a sergeant in the military in his youth and had obtained a GED then (Tr. 461-462), (2) the vocational expert indicated that Howard's subsequent civilian job as a heavy equipment mechanic had been semi-skilled in nature (Tr. 466), and (3) the plaintiff stated that he had never been in special education classes or repeated a grade as a child, and currently read as a hobby (Tr. 263, 265, 272, 275), not an activity usually selected by someone of limited intellect.

The plaintiff argues that evidence to establish that his borderline intelligence is a "severe" impairment is provided by the DOT. In support of his contention, he cites Frazee v. Barnhart, 259 F. Supp. 2d 1182 (D. Kansas 2003). The Frazee court cited Social Security Ruling 00-4p as imposing an affirmative duty on the ALJ to inquire about actual and apparent conflicts between the VE testimony and DOT information, such as the requirements of "general learning ability"; according to that Court, the ALJ should have addressed whether the plaintiff's full scale IQ of 79, at

9

Howard

the 8th percentile, precluded his ability to perform jobs that the DOT indicates would exclude the "bottom ten percent" of aptitude ability. Id. at 1197. Aside from the issue of how "aptitude ability" is related to IQ scores alone, there are factual differences between this case and the underlying facts in Frazee. In that particular case, however, there was not an issue of the "relation back" of information to a certain time frame (which would be inherent with the 2004 statement about "current" borderline intellect) and the fact that no impairment had been linked by examining sources to the borderline intellect. Moreover, other courts have not necessarily followed the results in Frazee.[1]

The decision will be affirmed.

This the _26_ day of October, 2005.

G. WIX UNTHANK
SENIOR JUDGE

---

[1] In Dunkerson v. Barnhart, 2004 WL 594993 (N.D. Iowa 2004), a plaintiff with measured IQ scores in the 80s, with evidence of prior past work requiring higher levels of functioning, was held able to perform jobs requiring medium general learning ability as described in the DOT.